IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:97-cr-314-AJT |
| SHAHEEM JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

Defendant Shaheem Johnson ("Defendant" or "Johnson")[1] has filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Doc. No. 676] (the "Motion"). On March 29, 2023, the Court held a hearing on the Motion, following which it took the Motion under advisement. Upon consideration of the Motion; the memoranda in support thereof and opposition thereto; the evidence, arguments, and statements at the hearing; and for the reasons stated below, the Motion is GRANTED IN PART and Johnson's sentence is reduced to 420 months, followed by 10 years of supervised release.

## I. BACKGROUND

### A. Offense Conduct, Trial, and Sentencing

Briefly summarized, for five years in the mid-1990s, Johnson and his twin brother, Raheem Johnson ("Raheem"), engaged in large-scale illegal drug distribution in four states and the District of Columbia. [Doc. No. 704] at 3.[2]  On December 17, 1998, following a jury trial, Johnson was convicted of twelve offenses,[3] after which this Court, Judge Lee presiding, sentenced Johnson as

---

[1] The Motion was originally filed *pro se*. The Office of the Federal Public Defender ("OFPD") has since been appointed to represent Johnson, and OFPD has filed a supplemental brief on his behalf, [Doc. No. 699].
[2] All page citations refer to the page number at the bottom of the cited document, not the page number associated with the CM/ECF file stamp at the top of the page.
[3] Count 1 was later vacated as a lesser-included offense to Count 2, and Count 3 was later dismissed pursuant to a stipulation at sentencing. [Doc. No. 704] at 6. Table 1 excludes those two convictions.

follows, with the italicized brackets denoting the mandatory minimum, either by statute or the then

mandatory guidelines:

**Table 1**

| Count | Conviction | Statute | Sentence |
|---|---|---|---|
| Count 2 | Operating a Criminal Enterprise | 21 U.S.C. § 848 | Life *[unclear]*[4] |
| Count 4 | Voluntary Manslaughter Using a Firearm During a Drug Trafficking Operation (re: Franklin's death) | 18 U.S.C. § 924(c) and (j)[5] | 70 months consecutive to Count 2[6] *[60 months]* |
| Count 5 | Aiding and Abetting Murder in Aid of Racketeering (re: Villa's death) | 18 U.S.C. § 1959(a)(1) & (2) | Life[7] *[life]* |
| Count 13 | Conspiracy to Commit Money Laundering | 18 U.S.C. § 1956(h) | 240 months concurrent to Count 2[8] *[97 months]*[9] |
| Counts 14, 16, 17 | Carrying a Firearm During a Drug Trafficking Offense | 18 U.S.C. § 924(c) | 240 months each, consecutive to Counts 2 and 4 and each other *[240 months]* |
| Count 15 | Distribution of 50 Grams or More of Cocaine Base | 21 U.S.C. § 841(a)(1) | 120 months concurrent to Count 2 *[120 months]* |
| Count 18 | Possession of a Firearm by a Convicted Felon | 18 U.S.C. § 922(g) | 120 months concurrent to Count 2 *[63 months]*[10] |
| Count 19 | Possession with Intent to Distribute 5 Kilograms or More of Cocaine | 21 U.S.C. § 841(a)(1) | 120 months concurrent to Count 2 *[120 months]* |

---

[4] As discussed, *infra*, both the Court and the parties have been unable to discern whether Johnson was convicted and sentenced under 21 U.S.C. § 848(a) or (b). The former included a mandatory minimum of twenty years and guideline sentence of 292-365 months, whereas the latter included a mandatory life sentence.

[5] While the Amended Judgment, [Doc. No. 500], lists Count 4 as a violation of "Title & Section . . . 18:13-0300.F," both the PSR and the Government's Motion to Correct Sentence, [Doc. No. 518], characterize Count 4 as being a conviction under 18 U.S.C. § 924(c) & (j).

[6] Johnson was originally sentenced to 60 months on Count 4. [Doc. No. 499] at 3. Subsequently, that judgment was amended to 70 months, [Doc. No. 500] at 3, based on the then-mandatory guidelines range of 70-87 months. [Doc. No. 518] at 2.

[7] At the sentencing phase, the Government sought imposition of the death penalty. The jury instead recommended life imprisonment. [Doc. No. 704] at 6.

[8] Defendant's brief, [Doc. No. 699] at 6, states Count 13 was to run consecutive to Count 2. However, the amended judgment, [Doc. 500] at 3, commands the term to run concurrently to Count 2.

[9] For Count 13, Johnson's adjusted offense level was 28. PSR at p. 43. Using the 1998 sentencing table and a criminal history category of 3, *id.* at p. 49, the guideline range was 97-121 months and the sentence of 240 months was above the then mandatory guidelines. However, the issue is now moot given the sentence ran concurrently to Count 2 and therefore has already been served.

[10] For Count 18, Johnson's adjusted offense level was 24. *Id.* at p. 47. Using the 1998 sentencing table and a criminal history category of 3, *id.* at p. 49, the guideline range was 63-78 months and the sentence of 120 months was above the then mandatory guidelines. However, the issue is now moot given the sentence ran concurrently to Count 2 and therefore has already been served.

[Doc. No. 500]. In total, Johnson was sentenced to two life terms plus 790 months imprisonment consecutive to his life sentences. Counts 13, 15, 18, and 19 ran concurrently to Count 2 and have already been served.

The Government attributes responsibility to Johnson for five deaths, specifically the killings of Bernard Franklin ("Franklin"), Richard Villa ("Villa"), Antonio Stevens ("Stevens"), Shawn Thomas ("Thomas"), and Tracy Morgan ("Morgan"), Thomas' girlfriend. *See* [Doc. No. 704] at 1 (describing Johnson as someone who "planned, participated in, or sanctioned the murders of five individuals."). This position is principally based on Johnson's overall leadership role and his conviction on Count 1[11] for a drug conspiracy, which was later vacated as a lesser-included offense of Count 2, which charged operating a continuing criminal enterprise.[12] However, Johnson was only charged specifically in connection with the deaths of Franklin and Villa. In that regard, Franklin's death was the basis of the charge against Johnson in Count 3 (for murder in aid of racketeering) and in Count 4 (for murder using a firearm during a drug trafficking offense). According to the PSR, Johnson planned to kill Franklin after learning that Franklin had purportedly sexually assaulted his (Johnson's) girlfriend and stole $100,000 in drug proceeds. PSR ¶¶ 43-45. Franklin was killed after a struggle ensued while Franklin and Johnson were in a room gambling, during which Johnson shot Franklin, though, it appears, not fatally. *Id.* Johnson's brother Raheem then shot Franklin in the back of the head, following which Rickey Piranti ("Rickey") and Damein Piranti ("Damein") also shot Franklin. *Id.* As to both Counts 3 and 4, the jury found Johnson guilty of the lesser-included offenses of voluntary manslaughter, [Doc. No. 704] at 5-6, and he was

---

[11] All references are to the Second Superseding Indictment ("SSI"), [Doc. No. 699-16].

[12] Specifically, an addendum to the PSR states as follows:

> The defendant was convicted in the conspiracy count, and the murders [of Tracey Morgan, Shawn Thomas, and Antonio Stevens] are specific overt acts mentioned in the Indictment. The defendant is accountable for any reasonably foreseeable and jointly undertaken activity.

PSR Addendum at 2.

sentenced on Count 4 to 70 months consecutive to his life sentence on Count 2, with the parties stipulating to the dismissal of Count 3.

Villa's death was the basis for the charge against Johnson in Count 5 (for murder in aid of racketeering). Villa was killed after the Johnson twins and Eldon Brown ("Brown") learned that Villa planned to rob and murder the Johnsons. PSR at ¶ 46. The jury convicted Johnson of aiding and abetting Villa's murder under 18 U.S.C. § 1959(a)(1). It also specifically found in response to special interrogatories, submitted to them for the purpose of determining whether to impose the death penalty, that Johnson did not substantially plan or premeditate Villa's murder and did not procure the commission of the murder by payment or promise of pecuniary value. [Doc. No. 699-15] at 3.[13] Additionally, ten of twelve jurors found that Johnson's "participation [in Villa's murder] was relatively minor." *Id.* at 7.

Johnson was not specifically charged or implicated in connection with Antonio Stevens' death in Count 1, [Doc. No. 699-16] at 10,[14] or the presentence report, PSR ¶¶ 41-42. Similarly, Johnson was not charged in connection with Thomas' murder, which was charged in Counts 8 and 9 against Raheem; and it is undisputed that Johnson was not present when Thomas was killed. Johnson also was not charged with Morgan's tragic murder, nor is it alleged that he sanctioned or had any advance knowledge of it, which occurred when she happened to be with Thomas, her boyfriend, when he was killed by Raheem and Rickey.[15] *But see* PSR Addendum at 2 (justifying

---

[13] The SSI alleges that the Johnson twins "procured" Brown to kill Villa and that the murder was "as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from th[e] enterprise." [Doc. No. 699-16] at 16, 23. However, the jury found that Johnson (1) did not cause Villa's death "after substantial planning and premeditation," (2) did not "in committing the offense and in furtherance of the criminal enterprise of which the offense was a part, use[] a firearm and knowingly direct[], advise[], authorize[], and assist[] others to use firearms" or (3) "procure[] [Villa's death] by payment and promise of payment of something of pecuniary value." [Doc. No. 699-15].

[14] Specifically, the SSI only implicates Raheem Johnson and Shawn Thomas in Antonio Stevens' death. [Doc. No. 699-16] at 10.

[15] The PSR characterizes the circumstances of Morgan's murder as her being "at the wrong place, at the wrong time." PSR ¶ 57.

inclusion of Morgan, Thomas, and Stevens in the PSR because their deaths were purportedly reasonably foreseeable and jointly undertaken activity).

### B. Post-Trial Activity

Following the jury verdict, Johnson moved for a new trial. The motion was largely denied, although his conviction in Count 1 was vacated as a lesser included offense of Count 2. Additionally, as previously detailed, Count 3 was dismissed pursuant to a stipulation. Johnson then filed a direct appeal on the grounds that the district court erred with respect to the jury instructions, admission of hearsay statements, denial of a motion for severance, and refusal to permit certain testimony, and that there was insufficient evidence with respect to Count 5. The Fourth Circuit found the district court committed plain error with respect to a portion of the jury instructions but declined to grant relief on that basis and otherwise affirmed his convictions.

In 2001, Johnson filed a § 2255 Motion to Vacate his sentence. This Court, Judge Lee presiding, denied the Motion, the Fourth Circuit declined to issue a certificate of appealability, and the appeal was dismissed. In 2014, the Court construed a Motion by Johnson as a second § 2255 petition challenging the sentence imposed in Count 5. Johnson also filed a motion under 18 U.S.C. § 3582(c)(2) for a reduction of sentence with respect to Counts 15 and 19. The Court, Judge Lee presiding, denied both motions and no appeal was filed.

In February 2021, Johnson requested compassionate release from the warden at FCI Hazelton. The next month, Johnson filed a Motion for Compassionate Release, *pro se*, which is now before the Court. Johnson's *pro se* Motion was largely based on his stacked sentences, his age at the time of the offense, and the risk factors associated with COVID-19. In May 2021, Johnson filed another compassionate release request with the warden, also detailing his personal background, good behavior in prison, sentencing under a since-changed statute, familial support,

remorse, and pledge to not reoffend. Days later, Johnson filed his reply to the Government's opposition to his Motion.

Shortly after Johnson filed his *pro se* Motion for Compassionate Release, the Office of the Public Offender (the "OFPD") sought appointment as Johnson's counsel and later sought leave to file a supplemental memorandum in support of Johnson's Motion, which the Court granted. In February 2023, the Court appointed the OFPD as Johnson's counsel.

As set out in the OFPD's supplemental memorandum, Johnson now seeks compassionate release on the following eight grounds: (1) rehabilitation; (2) age during offense; (3) *United States v. Booker*, 543 U.S. 220 (2005); (4) sentencing disparities; (5) stacked § 924(c) convictions; (6) plain error in jury instructions; (7) insufficiencies with respect to two of the three stacked convictions; and (8) purported eligibility for resentencing on Count 2.[16] *See generally* [Doc. No. 699]. On March 29, 2023, the Court held a hearing on the Motion, which Johnson attended and addressed the Court remotely, following which the Court took the Motion under advisement.

## II. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), a court may modify a sentence upon motion of the defendant, subject to certain exhaustion requirements, after considering any applicable factors set forth in 18 U.S.C. § 3553(a), if extraordinary and compelling reasons warrant a reduction.[17] 18 U.S.C. § 3582(c)(1)(A). While § 3582(c)(1)(A) requires that any reduction be consistent with applicable policy statements issued by the Sentencing Commission, the Fourth Circuit has determined that there are "no 'applicable' policy statements governing compassionate release motions filed by defendants . . . and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *United States v.*

---

[16] To the extent Johnson's *pro se* Motion offers any additional arguments not advanced by OFPD, the Court finds those arguments unpersuasive.

[17] Because Johnson is not 70 years old, § 3582(c)(1)(A)(ii) does not apply.

*McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (quoting in part *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis in original)).

## III. ANALYSIS – EXTRAORDINARY AND COMPELLING REASON

The Court finds that as a threshold matter it has jurisdiction to consider the Motion and Johnson has satisfied the exhaustion requirement.[18] Accordingly, the initial inquiry is whether there exists any extraordinary and compelling reasons that warrant a reduction in Johnson's sentence.

### A. Rehabilitation

Johnson points centrally to his rehabilitation as an extraordinary and compelling reason for relief. While rehabilitation alone may not constitute *the* extraordinary and compelling reason for relief, 28 U.S.C. § 994(t), it may be considered among other factors. *McCoy*, 981 F.3d at 286 n.8 ("there is no indication that successful rehabilitation efforts may not be considered *as one among other factors* under § 3582(c)(1)(A)(i)") (emphasis added).[19] Consequently, a strong record of rehabilitation in the Bureau of Prisons ("BOP") is one factor that may weigh in favor of granting compassionate release. *Id.* at 286 (affirming district courts' grants of compassionate release and noting defendants "had established excellent institutional records and taken substantial steps toward rehabilitation").

---

[18] The Government does not appear to contest that Johnson has satisfied the exhaustion requirement and that this Court has jurisdiction to consider the Motion. However, the Government does contend that three grounds on which Johnson seeks compassionate release are improper reasons upon which to grant relief. [Doc. No. 704] at 29 (arguing that because Congress has provided other methods to seek relief, arguments related to the plain error in jury instructions, lack of predicate for two of the § 924(c) convictions, and purported eligibility for resentencing under Count 2 are not cognizable at this stage). The Court addresses those arguments below.

[19] The Government urges a stricter rule – that the Court cannot consider rehabilitation until it finds an independent extraordinary and compelling reason justifying relief. [Doc. No. 704] at 14-15 (citing *United States v. Thomas*, 857 F. App'x 239, 243 (7th Cir. 2021)). The Court declines to adopt such a hard-and-fast rule in light of the Fourth Circuit's commentary in *McCoy* and absence of any suggestion that rehabilitation is appropriately considered not under § 3582(c)(1)(A)(i), but only after a finding of an extraordinary and compelling reason and in connection with the § 3553(a) analysis that follows such a finding.

There is no doubt that in the more than quarter-century that Johnson has spent in the BOP for his offenses, he has engaged in activities that reflect an extraordinary commitment to rehabilitation. He has been a model inmate for over a decade, a fact that the Government does not appear to dispute. He has received dozens of certificates, completed nearly 1,000 hours of education classes, and served as an instructor in the Bounce Back Transition Unit Program. [Doc. No. 699] at 12-13. He has taken a variety of career-related classes, including passing the West Virginia electrician license exam and graduating with high marks from a paralegal program. *Id.* at 13. He has also attended victim impact, violence prevention, and critical thinking classes and taught and mentored others in both formal and informal roles. *Id.* In particular, Johnson has participated in the Inside-Out Prison Exchange Program and has worked with college students, as both an inmate-student and facilitator, to study social justice issues and ways to reduce recidivism. *Id.* at 14. He is also involved in a think tank program that aims to reduce recidivism and assist with re-entry. *Id.* at 14-15. He has also participated in other programs, and the record contains numerous letters from other inmates about his mentorship, continued relationship with his family, and reduction in his BOP risk assessment. *Id.* at 16-18. BOP staff have even recognized Johnson as "instrumental to aiding other inmates in the Transition Unit in pursuit of their release and reentry goals" and that he "can be counted on to lead his peers by example." [Doc. No. 699-3] at 4.

In summary, Johnson's efforts at rehabilitation have been exceptional, particularly given so much of his rehabilitative activities occurred before passage of the First Step Act when there were no significant prospects for release and it appeared that he would serve his life sentences without reduction, reflecting that his motivations for rehabilitation are by all indications sincere. Notwithstanding the extremely serious conduct that gave rise to Johnson's incarceration, and that rehabilitation alone cannot be grounds for relief, Johnson's rehabilitation weighs heavily in his favor. *See United States v. Gray*, No. CCB-95-364, 2021 WL 1856649, at *6 (D. Md. May 10,

2021) (granting compassionate release and noting "other federal district courts have reduced once-mandatory life sentences of defendants who, like [defendant], were convicted of murder under 18 U.S.C. 1959(a)(1) when they were very young and, with no possibility of release, afterwards committed their lives to their rehabilitation and to mentoring others") (citations omitted).

### B. Age at the Time of the Offense Conduct

In *McCoy*, the Fourth Circuit repeatedly noted the defendants' youth as relevant factors in determining whether extraordinary and compelling circumstances existed. *McCoy*, 981 F.3d at 274, 279, 286, 288 (noting approvingly that the district courts conducted "individualized inquiries, basing relief . . . on such factors as the defendants' relative youth at the time of the offenses"). While Johnson had a more significant criminal history than the defendants in *McCoy*, and his conduct for these offenses began at age 20 and continued for five years, [Doc. No. 704] at 15, the pronouncements in *McCoy* do not limit consideration of age only where there is no significant prior criminal history or for those younger than Johnson at the time of their offense conduct. *See McCoy*, 981 F.3d at 286 (noting the defendants in *McCoy* ranged in age from 19-24 at the time of their offenses); *cf. Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021) ("youth matters in sentencing"); *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 476 (4th Cir. 2021), *as amended* (July 15, 2021), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) (Wynn, J., dissenting) ("[M]odern research also instructs that the prefrontal cortex, the part of the brain that makes it possible to exercise good judgment when presented with difficult life situations, does not finish maturing until age 25.") (citations and quotation omitted).

In *United States v. Ramsay*, one federal court specifically addressed the consideration of age within a similar context. There, the defendant was sentenced to life in prison following his conviction for murder in aid of racketeering – the same offense that Johnson was convicted of in Count 5. 538 F. Supp. 3d 407, 409 (S.D.N.Y. 2021). In *Ramsay*, the defendant and two others, all

gang members and drug dealers, fired into a crowd killing two bystanders. *Id.* One of those bystanders was pregnant, and the baby died following an emergency delivery. *Id.* After passage of the First Step Act, the Southern District of New York, Judge Rakoff presiding, considered whether "an offender's youth, combined with society's evolving understanding of the adolescent brain, [can] constitute [extraordinary and compelling] circumstances?" *Id.* Following a thorough analysis of Supreme Court precedent, attributes of adolescents, including immaturity, susceptibility, salvageability, and dependence, and reasons why youth matters, the court found that an offender's youth could serve as an extraordinary and compelling circumstance and reduced the life sentence to a term of 360 months. *Id.* at 409, 415-423; *see also* U.S. Sentencing Commission, *Youthful Offenders in the Federal System*, at 5 (May 2017) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf (last visited Aug. 4, 2023) ("The inclusion of young adults in the definition of youthful offenders is informed by recent case law and neuroscience research in which there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average.").

In addition to his age, the Court has also considered his offense conduct, as Johnson has urged, "in tandem with the incredible abuse, neglect, and trauma that he suffered as a child."[20] [Doc. No. 706] at 4. There is no doubt that Johnson's upbringing was full of abuse, neglect, and trauma. Absent a father and with a mother addicted to heroin, Johnson was in and out of foster care throughout his childhood. *Id.* at 5. He was molested as a child and repeatedly hospitalized for a variety of injuries, including those sustained after falling off a roof and being shot at age 16. *Id.* at 5-6. Further, he was exposed to a world of drug dealers at a very young age and was repeatedly

---

[20] While this argument is advanced in OFPD's supplemental brief, Johnson notably stated at the hearing that he did not offer his traumatic childhood as an excuse for his actions.

robbed at age 12 while working a paper route. *Id.* While nothing excuses Johnson's conduct, the horrific circumstance in which he was raised is properly to be considered in connection with his age at the time of his offense conduct; and his ability to serve in the BOP without any disciplinary issues for the past decade is evidence of his subsequent maturity. Accordingly, Johnson's age at the time his offense conduct began, continuing through his arrest, weighs in favor of relief.

### C. *Booker*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court found the Sentencing Guidelines to be advisory, not mandatory. However, *Booker* is not retroactive. *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005); *cf. Jones v. United States*, 431 F. Supp. 3d 740, 743 (E.D. Va. 2020) (noting that by not making *Booker* retroactive, there is "a lost generation, a group caught in a national purgatory, where individual citizens pay penance for the constitutional errors of the sovereign"). Unsettled by the Supreme Court or the Fourth Circuit is whether the Court may consider *Booker* as a factor in the extraordinary and compelling analysis.

The Government urges the Court to follow the Sixth Circuit's decision in *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021) and reject any reliance on *Booker* in determining whether there is an extraordinary and compelling reason for relief. *See id.* at 563 ("The district court erred when it considered *Booker*'s non-retroactive change in sentencing law as a factor to support an 'extraordinary and compelling' reason for [defendant]'s release."). But at least one district court in the Fourth Circuit has expressly declined to follow *Hunter*. *See United States v. Browning*, No. 2:98-00134, 2022 WL 1787133, at *4 n.7 (S.D.W.V. June 1, 2022) (rejecting *Hunter* and noting that the "Fourth Circuit has not explicitly held that pre-*Booker* sentences cannot be a factor for compassionate release. Indeed, given the discretion granted to courts in *McCoy* and [*United States v.*] *Kibble*[, 992 F.3d 326 (4th Cir. 2021)], the court believes it is permitted to consider this nonretroactive change in sentencing law as a factor for release under § 3582."). And this Court,

11

Judge Payne presiding, has cited *Booker* and ultimately granted compassionate release to a defendant serving life because, *inter alia*, "if the guidelines had not been mandatory at the time of [defendant's] sentencing, the Court would not have imposed a life sentence." *United States v. Scruggs*, No. 3:99-cr-200, 2021 WL 3115819, at *4 (E.D. Va. July 22, 2021).[21] The Court finds little jurisprudential reason not to consider *Booker* in determining whether extraordinary and compelling reasons exist.[22]

As an initial matter, whether *Booker* would have affected the Court's ability to impose a sentence other than Life on Count 2 is unclear given the surprising lack of clarity surrounding what specific offense was charged in Count 2.[23] In that regard, the Amended Judgment lists Count 2 as a violation of 21 U.S.C. § 848, [Doc. No. 500] at 1, as does the second superseding indictment, [Doc. No. 699-16] at 19. But neither document specifies whether Johnson was charged and convicted under § 848(a), which carries a mandatory minimum sentence of twenty years up to life, or § 848(b), which imposes either a mandatory life sentence or death. Had Johnson been convicted under § 848(a), given the base offense level of 38, PSR p. 40, and criminal history category 3, PSR p. 49, his guideline range for Count 2 would have been 292-365 months based on the 1998 sentencing table. A life sentence would have therefore been outside the then mandatory guidelines range; moreover, today under *Booker* the Court could impose for that offense a sentence less than the guidelines. On the other hand, were Johnson charged under § 848(b), Johnson faced then, and would today face, a mandatory life sentence with the Court having no ability under *Booker* to

---

[21] To be sure, Johnson was unquestionably more culpable and his conduct more severe than the defendant in *Scruggs*. Nevertheless, *Scruggs* stands for the proposition that this Court has found *Booker* to be a relevant factor in evaluating compassionate release motions.

[22] This Court, the undersigned presiding, previously granted a motion for compassionate release after "centrally consider[ing] the sentence [defendant] received relative to the sentence he would now receive for the same offense." *United States v. Redd*, 444 F. Supp. 3d 717, 722-23 (E.D. Va. 2020). While the basis for that sentence reduction was largely the stacking changes to § 924(c) made in the First Step Act, the Court did note that *Booker* also changed the possible sentence he could have received for the robberies. *Id.* at 723.

[23] Notably, Counts 4, 14, 16, and 17 all run consecutive to Count 2. Seventy months was imposed under Count 4, and 240 months was imposed under each of Counts 14, 16, and 17.

impose a lesser sentence. Neither the second superseding indictment, verdict,[24] nor judgment specified a charge/conviction under § 848(b); and neither counsel for the Government nor Johnson could provide any further clarity on the issue at the hearing, even though both represented that they had investigated the issue and would otherwise be inclined to assume a § 848(a) charge by default. Significant in this regard is a letter dated September 1, 2021 from Judge Lee, the sentencing judge, which shed some light on the basis on which Judge Lee acted:

> I was the judge who heard the trial and sentenced Shaheem Johnson. At the time of his sentencing, if I were I [sic] not bound by the mandatory US Sentencing Guidelines and mandatory life sentence by statute, **I would have imposed a substantial sentence of years, not life without parole**. I thought then and now that the Shaheem Johnson sentence was excessive.

[Doc. No. 706-1] (emphasis added). Given the reference to both a "mandatory life sentence by statute" in the singular, not plural, as well as the then "mandatory US Sentencing Guidelines," Judge Lee's letter can be read to suggest that the "mandatory life sentence by statute" refers to Count 5, and "the  mandatory US Sentencing Guidelines" refers to the sentence imposed on Count 2, charged as § 848(a),  even though the life sentence he received on that Count was above the guideline sentence.[25] Notably, the sentences for Counts 13 and 18 appear to also have been outside the ten mandatory guidelines. *See*, *supra*, n. 8-9.

Also significant for the purposes of assessing whether a sentence reduction is warranted is a letter that Johnson received from the jury foreman,[26] where the foreman stated as follows:

> I want you to know that when the jury, with me as foreman, found [] you guilty of the charges, and recommended the life sentence, we did so because those were our only two choices. We did not feel the death sentence was warranted, and so **we had**

---

[24] The verdict form simply has "Guilty" handwritten in a space next to "Continuing Criminal Enterprise, Count 2." [Doc. No. 408] at 1.

[25] Separately, Johnson was resentenced on Count 4 shortly after the judgment was originally imposed. In the amended judgment, Johnson was sentenced to an additional ten months, from sixty to seventy months, because the applicable guideline range was 70-87 months. [Doc. No. 518] at 2. Therefore, under a post-*Booker* framework, Johnson would have only been subject to the mandatory minimum of 60 months, not the minimum guideline range of 70 months.

[26] This was the second letter the jury foreman wrote to Johnson. The foreman previously initiated contact with Johnson, writing, *inter alia*, that had he been able to, he "would have voted for a parole review period." [Doc. No. 677] at 13.

only a life sentence to choose. **Had we been able to recommend a sentence of considerable time, with the chance for parole, I believe there were enough people in the group who believed that was right**, that we likely would have recommended a sentence of reduce [sic] years less than a life sentence. We understood that you were very young, had very little choice and guidance in how you lived your life, and we're [sic] involved in the difficult to escape mechanisms of the drug trade. Mitigating circumstances certainly made us feel that an option besides life or death was worth evaluation. **I would hope that as the sentencing rules change, you may be considered for a change to your sentence**, based upon all the positive things you have done with your life, for others. I believe our penal system needs massive reform, including sentencing rules and guidelines. It is my hope for you that somehow you can be one of the people who gets consideration very soon.

[Doc. No. 677] at 14 (emphasis added).

Given both the parties' and the Court's confusion and uncertainty around Count 2, the Court will consider the underlying doctrinal sentiments in *Booker* as a consideration, not a standalone justification, for whether extraordinary and compelling reasons exist to reduce Johnson's sentence. In that vein, the average federal sentence for murder is substantially less than life. [Doc. No. 699] at 27. In Fiscal Year 2021, the average sentence nationally for murder was 248 months, or just over 20 years. U.S.S.C., *2021 Federal Sentencing Statistics*, Table 4 (2021), https://www.ussc.gov/research/data-reports/geography/2021-federal-sentencing-statistics.

Nevertheless, Count 5 is still subject to a mandatory minimum sentence of life[27] and the Government urges that even if the Court considers *Booker*, "there is no basis to conclude that the court would not have imposed at least one life sentence under the advisory guidelines." [Doc. No. 704] at 21. But notwithstanding the existing statutory mandatory minimum for Count 5, Judge Lee's letter and the comments from the jury foreman makes clear that but for the sentencing and

---

[27] While the plain language of 18 U.S.C. § 1959(a)(1) suggests that a fine only might be permitted as an alternative to a life sentence, the Fourth Circuit, like other courts, has rejected that interpretation, determining it "cannot have been what Congress intended," and instead found the statute requires either death or life. *United States v. Under Seal*, 819 F.3d 715, 720 n.5 (4th Cir. 2016).

verdict obligations then imposed on them, which Congress has specifically permitted the Court to mitigate under 18 U.S.C. § 3582(c)(1)(A), Johnson would not have been sentenced to life.[28]

**D. Sentencing Disparities**

"A sentencing disparity may, in limited circumstances, constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release." *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021) (granting compassionate release after finding defendant "has demonstrated that the disparity between his sentence and those of his co-defendants constitutes an extraordinary and compelling reason for release"). *But see United States v. Arojojoye*, 806 F. App'x 475, 477-78 (7th Cir. 2020) (characterizing an argument with respect to sentencing disparity as "dubious" in a motion for compassionate release). Johnson urges the Court to consider the sentencing disparities between him and Damein, Rickey, and Brown. [Doc. No. 699] at 29.

Johnson, Damein, and Rickey were all charged under 18 U.S.C. § 1959(a)(1) (murder in aid of racketeering) in connection with the death of Bernard Franklin. Rickey was also charged under § 1959(a)(1) in connection with the murder of Shawn Thomas;[29] and Johnson was also charged in connection with Villa's death under § 1959(a)(1) (Count 3) and 18 U.S.C. §§ 924(c) and 924(j) (Count 4).[30]

Damein pled guilty to his § 1959(a)(1) charge pertaining to the Franklin killing and received the mandatory life sentence, later reduced to 20 years pursuant to a Rule 35 motion; he was released in 2015. [Doc. No. 543] at 1; [Doc. No. 547] at 1; [Doc. No. 699] at 30-31. Rickey

---

[28] The Government did not have the benefit of Judge Lee's letter at the time it filed its opposition. At the hearing, the Government deferred to the Court as to the extent to which the Court should consider it.

[29] Rickey pled to two § 1959(a)(1) charges, one by criminal information and one by indictment. [Doc. No. 233] at 1-2.

[30] All three were also charged with conspiracy to commit money laundering (Count 13 for Johnson), as to which Damien and Ricky plead guilty and Johnson was convicted. All three received sentences of 240 months, to run concurrently with their other sentences that have now been served. *See* [Doc. No. 173] at 1-2; [Doc. No. 233] at 1-2.

pled guilty to both of his § 1959(a)(1) charges pertaining to the Franklin and Thomas killings and received two concurrent mandatory life sentences, later reduced to a total of 40 years pursuant to a Rule 35 Motion (in which the Government recommended a reduced sentence of between 25 and 30 years). [Doc. Nos. 550, 556]. Accordingly, after Damein and Rickey's sentence reductions, they both effectively received 20 years per § 1959(a)(1) conviction.

At trial, Johnson was convicted of voluntary manslaughter in connection with Villa's death in both Count 3[31] and Count 4, for which he received 70 months on Count 4 to be served consecutive to Count 2, with Count 3 dismissed by stipulation prior to sentencing. He was also convicted of aiding and abetting Franklin's murder under § 1959(a)(1) (Count 5), for which he received the mandatory life sentence, notwithstanding that the jury determined that Johnson's participation in the death was not premeditated, that Johnson did not make a payment or promise of pecuniary value to Brown for Villa's murder, and that Johnson's role was "relatively minor." [Doc. No. 699-15] at 3, 7.

Brown, who shot and killed Villa, appears not to have been charged at all with Villa's murder and received a total sentence of 60 months on potentially different offenses in New York.[32]

---

[31] Johnson was charged under § 1959(a)(1) in Count 3 but was found guilty of the lesser included offense of voluntary manslaughter.

[32] Brown, who was not prosecuted in the Eastern District of Virginia but rather in New York, pled guilty to two counts of racketeering murder-for-hire under 18 U.S.C. § 1958, three counts of using a firearm during a crime of violence under 18 U.S.C. § 924(c), two counts of interference with commerce by threat or violence under 18 U.S.C. § 1951, and one count of false statements under 18 U.S.C. § 1001. *Id.* at 31. He testified against the Johnsons, was sentenced to 60 months on each count, all to be served concurrently, and released in 2003. Among Brown's eight convictions were three convictions under § 924(c). *See United States v. Brown*, No. 1:97-cr-1271, (S.D.N.Y.), [Doc. No. 7]. Inexplicably, while the statute, as interpreted by the Second Circuit at the time, imposed a five-year mandatory minimum for each count and required those convictions to run consecutively, they were ordered to run concurrently. And notably, had Brown been sentenced on his § 924(c) charges in the same manner as Johnson, two of those charges would have been considered subsequent offenses, resulting in a total sentence of forty-five years on those three § 924(c) charges alone. At the hearing, the Government was unable to provide any justification or explanation for Brown's extraordinarily lenient sentence besides the fact that he cooperated. The Government also argues that because it appears Brown's convictions in New York do not relate to Villa's murder, it is unclear whether Brown even qualifies as a similarly situated co-defendant. [Doc. No. 704] at 23, 26 ("Brown pleaded guilty in a different jurisdiction to different crimes"). But were Brown never charged in connection with Villa's murder the sentencing disparity between him (*i.e.*, no sentence) and Johnson would appear even more unwarranted.

16

There clearly exists sentencing disparities as between Johnson on the one hand and Damien, Ricky and Brown on the other. The Government contends, however, that these disparities are not "unwarranted" in light of the cooperation that Damien, Rickey and Brown provided and that the more appropriate comparator is Johnson's twin brother Raheem, who received eight life sentences plus 528 months. [Doc. No. 704] at 26.[33] But Raheem was convicted of, *inter alia*, four counts of murder in aid of racketeering, one count of second-degree murder in aid of racketeering, three counts of murder using a firearm during a drug-trafficking offense, and one count of second-degree murder using a firearm during a drug-trafficking offense. *Id.* By contrast, in relation to the deaths charged in the prosecution of the conspiracy, Johnson was convicted and sentenced for only one count of aiding and abetting murder in aid of racketeering and one count of voluntary manslaughter. Thus, Raheem is not an appropriate comparator.

The Court recognizes that as the leader of this criminal enterprise, along with his twin brother, Johnson had greater overall culpability than co-conspirators Rickey, Damein, or Brown. But without diminishing the extremely serious nature of Johnson's conduct that led to the deaths of Franklin and Villa, in both cases the jury clearly found mitigating circumstances, as reflected in its verdict and findings,[34] and Johnson was never specifically charged in connection with Thomas' death, as was Ricky, or with the deaths of Stevens or Morgan.[35]

---

[33]The Government also contends that these disparities were known to the Court when Johnson was sentenced. While surely the Court knew of Damein, Rickey, and Brown's cooperation at Johnson's sentencing, the disparate sentences all arose after Johnson's sentences, as Johnson was sentenced on March 26, 1999. [Doc. No. 499]. Damein's sentence was reduced on July 28, 2000, [Doc. No. 547]; Rickey's sentenced was reduced on September 15, 2000, [Doc. Nos. 556, 561]; and Brown was sentenced on March 8, 2000, *United States v. Brown*, No. 1:97-cr-1271 (S.D.N.Y.), [Doc. Nos. 7, 8].

[34] In the jury's special verdict form regarding Villa's death, ten of twelve jurors found that "the defendant's participation was relatively minor" and all twelve jurors found that "Richard Villa consented to the criminal conduct that resulted in [his] death." [Doc. No. 699-15] at 7.

[35] As previously noted, Johnson was not specifically charged with respect to the Stevens, Thomas, or Morgan murders, but was alleged to have ordered the Thomas murder in Count 1 of the second superseding indictment.

On balance, there are sentencing disparities that weigh in favor of granting relief. Damein and Rickey ultimately received 20 and 40 years, respectively, after pleading guilty to one and two § 1959(a)(1) murders, respectively. By contrast, Johnson was convicted of one § 1959(a)(1) murder and sentenced to life, notwithstanding that the jury found mitigating circumstances and that his participation was minor. There also exists an even greater unwarranted sentencing disparity between Johnson and Brown, given Brown's five year sentence (which was potentially not related to the underlying conduct in this case whatsoever) and the jury's findings that (1) Johnson did not substantially plan or premeditate Villa's killing, or procure payment to Brown for it, (2) Brown was the person that actually killed Villa, and (3) Johnson was found guilty of aiding and abetting.

**E. Stacked § 924(c) Convictions**

After Johnson's convictions, Congress amended 18 U.S.C. § 924(c)'s stacking provision, specifying it only applied after a predicate conviction became final. *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020) (noting the First Step Act changed § 924(c)'s enhancements to "no longer appl[y] to multiple § 924(c) convictions obtained in a single prosecution"). Johnson was convicted under § 924(c) in Count 4, and then three subsequent convictions under § 924(c) in Counts 14, 16, and 17. At the time of his conviction, § 924(c) imposed a mandatory 20 years imprisonment for every subsequent offense, and such sentence was required to run consecutively. Therefore, for his convictions in Counts 14, 16, and 17, Johnson was sentenced to 240 months on each count to run consecutive to Count 2 – *i.e.*, 720 months. Because Johnson's first § 924(c) conviction on Count 4 was not final prior to his convictions on Counts 14, 16, and 17, if sentenced today, Johnson would face a mandatory minimum of five years (60 months) for each of those three

counts, or a total of fifteen years (180 months), to run consecutive to Count 2, in addition to the five year mandatory minimum for Count 4.[36]

The Government argues that, as *McCoy* recognized, the First Step Act was not intended to resentence all defendants who were convicted under § 924(c). *McCoy*, 921 F.3d at 287. Rather, an individual, case-by-case assessment is required, and based on that assessment, the Government asserts a reduction in sentence is not warranted here. Principally, the Government distinguishes between Johnson's conduct and the conduct of the defendants in *McCoy*, noting that no death resulted from the conduct in those cases and that this case presents different circumstances given that in *McCoy*, unlike here, the § 924(c) sentences constituted the "lion's share" of the sentences, whereas here Johnson also received two life sentences. [Doc. No. 704] at 28 (quoting *McCoy*, 921 F.3d at 278). But as this Court, Judge Ellis presiding, has found, that a defendant's underlying sentence is life does not preclude a sentence reduction on account of § 924(c) changes. *United States v. Stoddard*, No. 1:14-cr-76, 2021 WL 2379568, at *4 (E.D. Va. June 9, 2021).

Johnson's sentences on Counts 14, 16, and 17 were four times higher than what Congress now deems adequate punishment for multiple § 924(c) convictions arising out of the same prosecution. This Court, the undersigned presiding, previously granted compassionate release where a defendant was convicted of three § 924(c) offenses under the same sentencing regime that Johnson was sentenced under. *Redd*, 444 F. Supp. 3d at 718. The defendant in *Redd* was sentenced to a mandatory 540 months (60 months for first offense and 240 months for each of the two subsequent convictions). *Id.* As the Court then noted, that resulted in a sentence "30 years, or three times longer, than what Congress has now deemed an adequate punishment for comparable § 924(c) conduct." *Id.* at 723. Here, Johnson was sentenced to more than 65 years (790 months) on

---

[36] Based on the then-mandatory guidelines, Johnson was sentenced to 70 months on Count 4, not the mandatory minimum of 60 months. [Doc. No. 500] at 3.

Counts 4, 14, 16, and 17, whereas today he would only face a mandatory minimum of 20 years (240 months).[37] In other words, the changes to § 924(c) potentially account for an additional term of 45 years (540 months) imposed on Johnson than would be required today. Accordingly, notwithstanding the seriousness of Johnson's underlying offenses, the massive disparity resulting from the statutory changes to § 924(c) present an extraordinary and compelling reason in this case.

### F. Plain Error in Jury Instructions Regarding Continuing Criminal Enterprise

On direct appeal of his conviction, Johnson challenged, *inter alia*, the jury instructions on Count 2. *United States v. Johnson*, 219 F.3d 349, 352-53 (4th Cir. 2000). Specifically, the jury instructions did not require the jury to find *unanimously* that three or more violations of federal narcotics laws occurred. *Id.* at 353. At the time the instructions were given, Fourth Circuit precedent did not require the jury to find unanimously that each violation that comprised the series of violations occurred. *Id.* Subsequently, the Supreme Court in *Richardson v. United States*, 526 U.S. 813 (1999), so found. Accordingly, on appeal the Fourth Circuit determined the district court's failure to instruct as to the need to unanimously find each violation amounted to plain error; nonetheless, the court was "satisfied that this is not a case in which we should exercise our discretion to correct the error." *Id.* at 353-54.

Johnson claims that because "there is no way of knowing whether the jury unanimously found each violation underlying the [continuing criminal enterprise] count," the Court "is free to

---

[37] An amendment to Section 1B1.13 of the sentencing guidelines, effective November 1, 2023, is particularly relevant. In evaluating what constitutes an extraordinary and compelling reason, the sentencing commission has added "unusually long sentence," which states as follows:

> *Unusually Long Sentence.*—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S. Sentencing Commission, Amendments to the Sentencing Guidelines, p.2, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (last accessed Aug. 4, 2023).

consider it when assessing whether there are extraordinary and compelling reasons for a reduction in sentence." [Doc. No. 699] at 35-36. The Government contends that this amounts to a collateral attack on Johnson's conviction on Count 2, which it claims is not permitted in a compassionate release motion. *See* [Doc. No. 704] at 29-38.

Ultimately, the Court need not, and will not, determine whether to consider the plain error in the jury instructions because, even if it were able to, it is unpersuasive and does not bear on whether extraordinary and compelling circumstances exist to justify relief. The Fourth Circuit's reasoning on this exact issue in this exact case is persuasive and binding. The plain error in the jury instructions does not support relief.

### G. Lack of § 924(c) Predicate Offenses

When Johnson was convicted, the Fourth Circuit was in the minority of federal courts of appeals that permitted multiple § 924(c) convictions to be premised on a single predicate offense. *United States v. Jackson*, No. 3:90-cr-85, 2021 WL 2226488, at *2 (W.D.N.C. June 2, 2021). In 1999, following Johnson's conviction, the Assistant Attorney General of the United States Department of Justice ("DOJ") instructed all United States Attorneys to follow the approach of the majority of federal appellate courts in requiring each § 924(c) charge to be based on a separate predicate offense. *Id.* As discussed below, if this guidance had been in effect and applied to Johnson, two of his four § 924(c) convictions would likely not have been charged.

#### i. Counts 4 and 14

Count 4 was predicated on Count 1, and Count 14 was predicated on Count 2. [Doc. No. 699] at 37 & n.25. However, Count 1 was later vacated as a lesser-included offense of Count 2, meaning the § 924(c) charges in Counts 4 and 14 were effectively both predicated on the offense conduct arising in Count 2. *Id.* Accordingly, only one of those § 924(c) Counts would have been charged.

###### ii. Counts 16 and 17

The § 924(c) charge in Count 16 clearly relates to the underlying conduct charged in Count 15. Specifically, Count 15 charges Johnson for distributing 50 grams or more of a substance containing cocaine base on August 1, 1996, and Count 16 charges Johnson for carrying a firearm while distributing 50 grams or more of cocaine base on the same date. [Doc. No. 699-16] at 35-36.

Based on the second superseding indictment, it appears that Count 17 is connected to the same predicate offense. Specifically, Count 17 charges:

> On or about August 1, 1996, in Arlington County, Virginia, within the Eastern District of Virginia, defendant SHAHEEM JOHNSON did unlawfully and knowingly aid and abet Troy Edmonds in the carrying of a Taurus 9mm semi-automatic pistol during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit: possession with intent to distribute cocaine and cocaine base, Schedule II narcotic controlled substances, a violation of Title 21, United States Code, Section 841(a)(1).
>
> (In violation of Title 18, United States Code, Sections 924(c)(1) & 2)

*Id.* at 37. The only possible other remaining charge that could serve as a separate predicate to Count 17 is Count 19, which charges:

> On or about August 2, 1996, in Arlington County, Virginia, within the Eastern District of Virginia, defendant SHAHEEM JOHNSON did unlawfully, knowingly and intentionally possess with the intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine HCl, a Schedule II narcotic controlled substance.
>
> (In violation of Title 21, United States Code, Section 841(a)(1))

*Id.* at 39. As charged in the SSI, the conduct alleged in Count 19 is unlikely the predicate offense to Count 17. Count 17 lists an August 1, 1996 offense date, is more likely based on offense conduct outlined in Count 15 bearing the same date, and describes the underlying offense as "possession with intent to distribute cocaine and cocaine base, Schedule II narcotic controlled substances." Count 19 lists an August 2, 1996 offense date and describes materially different conduct than

22

described in Count 17, viz., "possess[ion] with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine HCl, a Schedule II narcotic controlled substance."

### iii. Application Today and Relevance to Proceeding

For the foregoing reasons, the United States today would have likely only charged either (a) Count 4 *or* Count 14, and (b) Count 16 *or* Count 17. Therefore, Johnson would have only faced two § 924(c) charges, resulting in, under today's law, two five-year mandatory minimum sentences to run consecutive to any other term of imprisonment. However, the Government contends that this issue, whatever its merit, amounts to a collateral attack not properly suited for a compassionate release motion. In support of that position, the Government cites, *inter alia*, a prior decision by this Court, Judge Payne presiding. In *United States v. Ferguson*, the Court held:

> The compassionate release statute allows the court to consider extraordinary and compelling reasons warranting compassionate release, but it does not replace the established mechanism for challenging the validity of a sentence. Nor does it allow the defendant to make arguments that were, or could have been, raised in direct appeal or collateral review.

No. 3:04-cr-13, 2021 WL 1701918, at *4 (E.D. Va. Apr. 29, 2021). And the Fourth Circuit affirmed *Ferguson*, holding "[b]ecause § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *United States v. Ferguson*, 55 F.4th 262, 270 (4th Cir. 2022). But the challenges to the convictions in *Ferguson* were based on subsequent Supreme Court precedent or Fifth and Sixth Amendment rights. *Ferguson*, 2021 WL 1701918, at *4. By contrast, Johnson's position is based on a policy change implemented by the DOJ that is nonbinding on this Court.

Accordingly, the issue Johnson presents is best considered not as an attack on his conviction, but rather as an argument that there exists an extraordinary and compelling reason

given that under similar circumstances, today he would likely face two fewer § 924(c) charges. This change yields a massive disparity between Johnson's sentence and that of a defendant sentenced today—a disparity reinforced by the substantial disparities between Johnson's sentence and the sentences of certain co-conspirators. And while not alone sufficient to warrant relief, the Court finds this argument to be a relevant consideration that weighs in favor of reducing Johnson's § 924(c)-related convictions.

### H. Resentencing of Count 2 as a "Covered Offense" under the First Step Act

Johnson contends that Count 2 is a "covered offense" under the Sec. 404 of the First Step Act, which would allow the Court to resentence him.[38] [Doc. No. 699] at 38. However, Johnson's Motion is made pursuant to 18 U.S.C. § 3582(c)(1)(A), *id.* at 1, and the Fourth Circuit has expressly held that "§ 3582(c)(1)(B) is the appropriate vehicle for a First Step Act motion." *United States v. Wirsing*, 943 F.3d 175, 183 (4th Cir. 2019). Johnson has conceded that his Motion is not the appropriate avenue for seeking relief under § 404 of the First Step Act, but nevertheless requests "for the sake of judicial economy" that "the Court [] consider that claim as contributing toward an already extraordinary and compelling case for release." [Doc. No. 706] at 12.

This Court, Judge Novak presiding, previously confronted a similar issue. In *United States v. Dodson*, the defendant filed a motion for compassionate release based on changes to the guidelines range. No. 3:02-cr-257, 2020 WL 6323721, at *5 (E.D. Va. Oct. 28, 2020). The Court determined that the defendant's motion would have been more appropriately made under Sec. 404

---

[38] By way of background, to qualify as a "covered offense" under the First Step Act, the offense must constitute "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." First Step Act, Pub. L. No. 115-391, § 404(a), 132 Stat. 5194 (2018). Johnson contends that because Count 2 has "at least one penalty attached to it that was modified by Section 2 or 3 of the Fair Sentencing Act, it therefore qualifies" notwithstanding the fact that 21 U.S.C. § 848, the charge in Count 2, itself was not modified by Section 2 or 3 of the Fair Sentencing Act. [Doc. No. 699] at 43. The Government largely focuses its arguments on the impropriety of a Sec. 404 argument in a § 3582(c)(1)(A) motion, though it "does not concede" that Count 2 is otherwise a covered offense.

of the First Step Act, and that while it would still "consider the guideline reduction in the overall § 3553(a) analysis, th[e] compassionate release motion does not provide the Court with the appropriate vehicle to entertain [Sec. 404] relief on an independent basis." *Id.* Here, it appears that Johnson attempts to use Section 404 as justification for the Court to resentence him on Count 2, presumably in the event that the Court declines to exercise § 3582(c)(1)(A) authority to reduce that sentence.

Count 15 is more clearly impacted by Sections 2 and 3 of the Fair Sentencing Act, not Count 2. And Johnson has already completed his sentence on Count 15, which was 120 months to run concurrent with Count 2. Therefore, there is no need for Johnson to receive relief as to Count 15 and this argument is advanced for the purpose of seeking relief as to Count 2. But because the Fourth Circuit has held that § 3582(c)(1)(A) is an inappropriate vehicle for First Step Act Section 404 relief, the Court will decline to resentence Johnson on Count 2 *on that basis*.

### I. Totality of the Extraordinary and Compelling Reasons Asserted

In summary, there are extraordinary and compelling reasons that warrant a sentence reduction and a concomitant consideration of the § 3553(a) factors. Johnson's rehabilitation has been remarkable, having aggressively pursued for himself educational and other programming as well as providing leadership and mentorship to other inmates.  Johnson was relatively young at the time of his offenses, and his offenses should be at least partially viewed within the context of the horrific childhood he endured. *Booker*, to the extent applicable, counsels in strong favor of a reduction in sentence on Count 2, particularly in light of the letters from Judge Lee and the jury foreman, both of whom sat through the trial and heard all of the evidence.[39] Sentencing disparities exist between Johnson as compared to Rickey, Damein, and particularly Brown. The § 924(c)

---

[39] The Court's determination that Johnson has demonstrated extraordinary and compelling reasons exist would stand even if Johnson was convicted under § 848(b), thereby rending *Booker* meaningless with respect to Count 2.

stacking that resulted in a combined 60 years on Counts 14, 16, and 17 to be served consecutive to Count 2 has been eliminated under the First Step Act and today, Johnson would face a mandatory minimum of 15 years (180 months) on those three counts instead of the 60 years (720 months) he did at sentencing—a 75 percent reduction. Moreover, under DOJ policy, Johnson today would have likely been convicted and sentenced for only two, not four, § 924(c) charges, thereby reducing his consecutive sentence by 40 years (480 months) on that basis alone. Accordingly, the Court finds that extraordinary and compelling reasons exist to justify a sentence reduction and will proceed to the § 3553(a) analysis.

### IV. ANALYSIS – § 3553(a) FACTORS

Having determined that extraordinary and compelling reasons support a sentence reduction, the Court must "next examine[] whether the sentencing factors under 18 U.S.C. § 3553(a) also support early release." *Eccleston*, 573 F. Supp. 3d at 1019. In relevant part, § 3553(a) requires the Court to impose a sentence "sufficient, but not greater than necessary," and in doing so it should consider, *inter alia*, "the nature and circumstances of the offense and the history and characteristics of the defendant"; how the sentence will reflect the seriousness of the offense, promote respect for the law, deter other criminal conduct, and protect the public; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a).

As an initial matter, with respect to the sentences Johnson is currently serving or has yet to serve (*i.e.*, his life and consecutive sentences), Johnson was sentenced to either the mandatory minimum sentence or the minimum guideline sentence on every count.[40] Accordingly, given these sentences were the mandatory minimum required by statute or the guidelines, Judge Lee had no meaningful opportunity to evaluate and apply the § 3553(a) factors in determining an appropriate

---

[40] Notwithstanding the uncertainty regarding Count 2.

sentence. Accordingly, Johnson's case, as now before the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), provides the first opportunity to comprehensively consider the § 3553(a) factors without being completely restrained by any mandatory statutory or guideline provisions. And while the Government centrally contends that no reduction is appropriate in light of the still applicable mandatory life sentence on Count 5, Congress did not exempt mandatory life sentences from (a) relief under the original language in § 3582(c)(1)(A)(i) or (b) the modifications to the exhaustion requirements of § 3582(c)(1)(A). Likewise, as far as the Court can determine, no federal appeals court, and certainly not the Fourth Circuit, has limited compassionate release relief to cases where there is no mandatory life sentence. And in evaluating the § 3553(a) factors, the Court is to consider "the most up-to-date picture" of Johnson—*i.e.*, how he appears at the time of resentencing—not as Johnson was when he was sentenced a quarter-century ago. *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing *United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (per curiam) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing")).

### A. § 3553(a)(1)

With respect to the "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as Johnson himself acknowledges, his crimes "were heinous and warranted a substantial sentence of imprisonment." [Doc. No. 699] at 46. He was a leader in a five-year, extensive and violent illegal narcotics enterprise operating across five jurisdictions. It is also undisputed that as a young child Johnson experienced a horrific upbringing that no doubt played a significant role in landing him in prison. That he had such a traumatic upbringing, yet by all accounts has still matured and turned his life around so significantly in prison while facing two life sentences without the possibility of parole, is

particularly noteworthy.[41] And while Johnson did proceed to trial, he accepted responsibility for his actions immediately thereafter, stating:

> I sold drugs, that's what I did. And along the way, I either, directly or indirectly, set the atmosphere for many people to get hurt and to lose their lives . . . . [A]nd although I never actually sat down and contemplated the taking of a life, I nonetheless, by my participation in the selling of drugs, was condoning everything that came along with it . . . . I do feel responsible for the actions of the others.

[Doc. No. 699-19] at 2-3.

Johnson also spoke at length at the March 29, 2023 hearing about his culpability and responsibility for the harm that flowed from the criminal enterprise he led. He credibly expressed genuine remorse for his actions and the destruction that followed and took full responsibility for it. As to Johnson's characteristics in prison, beyond Johnson's substantial rehabilitation as previously described, his daughter testified at the hearing about how he has been a supportive and loving father and grandfather in prison, calling every morning. According to Johnson, his daughter has inspired him to surround himself with positive people, and if released he plans to work for an electrical company and youth initiative, publish a book he is writing to deter others from engaging in criminal activity, and ask his longtime partner and mother of his daughter to marry him. The Court is also in receipt of other letters attesting to Johnson's changed character and redeeming qualities. While none of this begins to excuse Johnson's prior conduct, it does speak to who Johnson is today as he now appears before the Court.

---

[41] Johnson has had several citations in prison, many of which were early on in his sentence and related to using illegal substances in prison to purportedly deal with depression. *Id.* at 47. Johnson's last infractions were a decade ago for possessing a dangerous weapon and assaulting another inmate by hitting him with a broom. [Doc. No. 699-5] at 8. According to Johnson, the weapons charge related to knives found in a light fixture in a cell that Johnson shared with another inmate. [Doc. No. 699] at 47. Special tools were needed to remove the light fixture to access the knives, which Johnson did not have. Johnson maintains that the weapons were not his, and that he only admitted to the infraction because he "felt coerced by prison personnel, who said Mr. Johnson could be physically assaulted if he allowed his cellmate to take the charge." [Doc. No. 699] at 47-48. As to the broom incident, Johnson claims the inmate he struck was going to stab another inmate, and so he struck the inmate with the broom to stop the more serious attack. *Id.* at 48. While the Court has no way to conclusively evaluate Johnson's explanations, they appear plausible and are made more credible by the fact that he has had no citations in the past decade.

Ultimately, Johnson, now in his fifties, has served more than a quarter-century in prison – more than half his life. Without diminishing or minimizing Johnson's crimes and the impacts they had and continue to have on the victims and their families, Johnson's age at the time of his offense conduct, the environment in which he lived since he was a young child, and his transformation and maturity over the last twenty five years while in prison, on balance, weigh in favor of relief. At the heart of the First Step Act is the view that individual considerations should guide the decision as to when and if certain offenders deserve the chance to rejoin the community. Johnson has demonstrated that he falls into the category of persons who have earned that opportunity, notwithstanding his offense conduct.[42]

### B. § 3553(a)(2)

The second factor in the § 3553(a) analysis emphasizes:

> [T]he need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Johnson has served a quarter-century in prison. And while every case is different, courts within this Circuit and elsewhere have granted compassionate release motions for

---

[42] The Government cites several cases, including from this Court, for the proposition that a defendant's conviction for drug-related murders are simply too serious and require such substantial punishment that compassionate release is not warranted. [Doc. No. 704] at 41 (citing *Brown v. United States*, No. 2:98-cr-47, 2021 WL 3272203 (E.D. Va. July 30, 2021) and *Mosley v. United States*, No. 2:11-cr-58-3, 2021 WL 2386120 (E.D. Va. June 10, 2021)). But *Brown* was a compassionate release motion based solely on COVID-19, and *Mosley* involved a 20-year sentence, not life in prison. The Government also cites *Butts v. United States*, No. 2:09-cr-2, 2021 WL 1082480 (E.D. Va. Mar. 18, 2021), where this Court, Judge Jackson presiding, denied compassionate release to a defendant that "recruited multiple triggermen, provided them with weapons, and accompanied them to the shooting of three federal witnesses," two of whom were killed. In *Butts*, the defendant received two consecutive life sentences that had already been reduced to 396 months imprisonment. Thus, both the facts and posture of that case—*i.e.*, the defendant's life sentence had already been reduced—are materially different than this one. The Government also cites two other cases from this District where the Court, Judge Jackson likewise presiding in both, determined that the defendants' leadership in violent drug distribution enterprises weighed heavily against a reduction in sentence. [Doc. No. 704] at 42 (citing *Hirst v. United States*, No. 4:02-cr-134, 2021 WL 2744531 (E.D. Va. July 1, 2021) and *Speed v. United States*, No. 2:00-cr-92, 2021 WL 1240090 (E.D. Va. Apr. 2, 2021)). But the defendant in *Hirst* was not sentenced to life and thus had an opportunity for release, and the defendant in *Speed* seemed to only base his motion for compassionate release on COVID-19.

defendants serving life sentences for § 1959(a)(1) convictions and who, like Johnson, had already served more than two decades in prison.[43] Overall, the sentence reduction that the Court awards, 35 years with 10 years of supervised release, constitutes a just punishment and would likely be viewed as such by both the sentencing judge, Judge Lee, and the jury who convicted Johnson, as reflected in the jury foreman's statement. [Doc. No. 699] at 51.[44]


[intentionally left blank]

---

[43] *See United States v. Morris*, No. 3:99-cr-264, 2022 WL 3703201 (D. Conn. Aug. 26, 2022) (granting compassionate release and reducing sentence to 360 months for defendant who had served 23 years and was convicted under, *inter alia*, § 1959(a)(1) and sentenced to four life sentences); *United States v. Gray*, No. CCB-95-364, 2021 WL 1856649 (D. Md. May 10, 2021) (granting compassionate release and reducing sentence to time served for defendant who had served 27 years and was convicted under, *inter alia*, § 1959(a)(1) and sentenced to life); *United States v. Perez*, No. 3:02-cr-7, 2021 WL 837425 (D. Conn. Mar. 4, 2021) (granting compassionate release and reducing sentence to time served for defendant who had served 23 years and been convicted under, *inter alia*, § 1959(a)(1) and sentenced to three life sentences); *United States v. Rios*, No. 3:94-cr-112, 2020 WL 7246440 (D. Conn. Dec. 8, 2020) (granting compassionate release and reducing sentence to 360 months for defendant who had served 25 years and was convicted under, *inter alia*, § 1959(a)(1) and sentenced to three life sentences).

[44] The Court has also considered the Government's argument at the hearing with respect to the special verdict form for Count 5, where eleven of twelve jurors found as to the fifth mitigating factor that:

> Shaheem Johnson will not represent a continuing threat to society if he is sentenced to life imprisonment without the possibility of release. He has adjusted well to incarceration and will not be a threat if sent to prison for the rest of his life.

[Doc. No. 699-15] at 7-8. But to read that finding as justification for denying relief, as the Government does, ignores the context in which it was made and for what purpose. In that regard, the jury only had two choices: life or death. To justify a life sentence, the jury voted on the fifth mitigating factor *as presented to them* in the special verdict form. In other words, there was no opportunity for the jury to similarly find that Johnson would not represent a continuing threat to society if eventually released. Indeed, the jury foreman's statements about a desire to sentence Johnson to less than life suggest that at least some jury members would have so found. And relatedly, the jury unanimously found several redeeming qualities of Johnson that, in the absence of the jury's ability to expressly opine on its views regarding Johnson's possible release, arguably demonstrate that the jury would have been open to Johnson's possible future release, particularly following the type of significant rehabilitation that Johnson has demonstrated. Specifically, the jury unanimously found that:

> 6. Shaheem Johnson was exposed to significant negative family circumstances during critical stages of his life which rendered him vulnerable to influences which led him to criminal activity.
> ***
> 8. Shaheem Johnson is a father of children and is an active participant in their lives.
> 9. Shaheem Johnson's life has considerable value to members of his family and extended family.
> ***
> 11. Other factors in the defendant's childhood, background or character mitigate against imposition of a sentence of death.

[Doc. No. 699-15] at 8.

### C. § 3553(a)(6)[45]

This factor examines "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). As detailed, *supra*, a sentence of less than life in prison would roughly accord with the sentences ultimately handed down to Rickey and Damein (20 years per § 1959(a)(1) conviction). It is also relevant that Johnson has already served more time than Damein did for his § 1959(a)(1) conviction, and more time than the lower range (25 years) requested by the Government in its Rule 35(b) motion with respect to Rickey, who unlike Johnson, was convicted of *two* § 1959(a)(1) mandatory life charges. While cooperation surely warrants some benefit, in this case, the disparity between receiving 20 years per § 1959(a)(1) conviction and life is too great and substantially unwarranted. Additionally, life in prison far exceeds Brown's punishment (if he indeed received any) for carrying out Villa's killing.

### D. Balance of § 3553(a) Factors

On balance, these factors counsel in favor of a substantial sentence of years less than life in prison. Based on the facts and circumstances, extraordinary and compelling reasons exist to justify a sentence reduction, which is further supported upon consideration of the § 3553(a) factors. Accordingly, the Court will reduce Johnson's sentence to a total period of incarceration of 420 months, or 35 years, with credit for time served and before application of any good time or other credits. This sentence reduction represents a reduction on Count 2 to 20 years; a reduction on Count 5 to 20 years to be served concurrently with Count 2; and reductions of the § 924(c) charges

---

[45] The third, fourth, fifth, and seventh factors are, respectively, "the kinds of sentences available," "the kinds of sentence and sentencing range established" by the guidelines, "any pertinent policy statement . . . issued by the Sentencing Commission," and "the need to provide restitution to any victims of the offense." Neither party contends they are relevant and thus the Court will not consider them. *See United States v. Gaffney*, No. 1:95-cr-53, 2022 WL 888350, at *6 (E.D. Va. Mar. 25, 2022) (declining to consider § 3553(a) factors in a compassionate release motion that no party argued was relevant).

in Counts 4 and 16 to seven and a half years (90 months) each, to run consecutively to Count 2 and each other, with no time imposed with respect to the § 924(c) charges in Counts 14 and 17, and no changes to the remaining counts. Johnson's sentence will also be modified to include a term of 10 years of supervised release.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Motion, [Doc. No. 676], be, and hereby is, GRANTED IN PART insofar as Johnson's sentence is reduced to a term of imprisonment of 420 months, with credit for time served and before application of any good time or other credits, and is otherwise denied; and it is further

**ORDERED** that Johnson's term of supervised release be, and hereby is, MODIFIED to a term of 10 years with the same conditions previously imposed.

The Clerk is directed to forward a copy of this Memorandum Opinion & Order to all counsel of record and the Director of the Bureau of Prisons.

Alexandria, Virginia
August 8, 2023

_____
Anthony J. Trenga
Senior U.S. District Judge